Board of Assessment and Revision of Taxes of Northampton County, Appellant, v. Bethlehem Housing Authority, Appellee.

Argued October 3, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Andrew L. Herster,* County Solicitor, with him *Renald S. Baratta,* Assistant County Solicitor, for appellant.

*Thomas J. Maloney,* for appellee.

OPINION BY JUDGE WILKINSON, November 14, 1973:

The question for decision in this case is aptly stated by appellant in its brief as follows: "Are structures permanently affixed to leased premises but subject to a collateral agreement that they remain the property of the lessee who constructs them or otherwise acquired title thereto, taxable as part of the real estate of the lessor?" Stated another way, does property that is owned by public housing authorities, the property of which is given specific exemption from taxation, lose its tax exempt status because it is affixed to the real property of a taxable entity? The court below answered in the negative and we must affirm.

The structures, the taxability of which is in question, were built by the Federal Public Housing Authority in 1942 as a war housing project on land leased for one dollar ($1.00) per year from Bethlehem Steel Company, now Bethlehem Steel Corporation. The Federal Public Housing Authority, on June 20, 1953, transferred title to all the buildings to Bethlehem Housing Authority, appellee, an authority organized and existing under the Housing Authorities Law, Act of May 28, 1937, P. L. 955, as amended, 35 P.S. §1541 et seq. The Bethlehem Housing Authority leased the land from Bethlehem Steel Corporation which formerly had leased the land to the Federal Public Housing Authority. In 1953, the county appraised the land at $119,800 and the improvements and structures at $747,400. Bethlehem

Steel Corporation has been paying taxes based on both the land and the structures and has been reimbursed by the Bethlehem Housing Authority under the terms of the lease.

The Authority appealed the assessment in October of 1971, but the assessment was affirmed by the County Commissioners sitting as the Board of Assessment and Revision of Taxes, appellant here. The Authority then appealed to the court below. In the court below, the Authority attempted to establish tax exemption for both the leased land and the structures owned on the theory that they were "public property used for public purposes" under the Act of May 22, 1933, P. L. 853, Art. II, Section 204(g), as amended, 72 P.S. §5020-204(g). The lower court, in an able opinion by Judge PALMER, rejected the exemption claimed for the land because it was not owned by a tax exempt entity. Appellee, Authority, does not contest in this Court that decision that the land was taxable.

Removing the land from consideration, and accepting the agreement of both parties that the improvements and structures are owned by the Bethlehem Housing Authority, they are specifically exempt from taxation by the provisions of Section 23 of the Housing Authorities Law, 35 P.S. §1563, which state, *inter alia*: "The property of an Authority is declared to be public property used for essential public and governmental purposes and such property and an Authority shall be exempt from all taxes and special assessments, except school taxes, of the city, the county, the Commonwealth, or any political subdivision thereof."

Justice, later Chief Justice, STERN, in an exhaustive opinion in *Dornan v. Philadelphia Housing Authority,* 331 Pa. 209, 200 A. 834 (1938), upheld the constitutionality of the Housing Authorities Law in all respects, except that it could not subject the property of the Authority to school taxes in this indirect way. Justice

STERN pointed out that the property of the public housing authorities would have been exempt from taxation in any event as public property used for public purposes.

While it would appear that the instant case may be the first case of tax exempt structures on taxable real estate being separately exempt, the contrary has been decided squarely. A very common example is that of structures, mostly cabins, built on state land, leased by the owner of the cabin. These structures were determined to be properly taxable to the owner as real estate in spite of the fact that they were permanently affixed to tax exempt real estate, i.e., real estate of the Commonwealth. *County of Franklin v. McClean*, 93 Pa. Superior Ct. 165 (1928). It had earlier been decided that structures which were built by the owner of the structure with the right to remove it at the conclusion of the lease were taxable separately to the lessee-owner of the structure as real estate owned by the lessee. *Pennsylvania Stave Company's Appeal*, 236 Pa. 97, 84 A. 761 (1912). *See also Cowanshannock Coal and Coke Company's Tax Assessment*, 283 Pa. 122, 128 A. 839 (1925). The most recent case is *H. K. Porter Co. Appeal*, 421 Pa. 438, 219 A. 2d 653 (1966), where a corporation that built a hangar on a leasehold on land that was tax exempt was taxed for its ownership of the structure.

Appellant raises the question that the device of transferring buildings to tax exempt organizations could be used as a "tax shelter." There is no evidence here that there is any suspicion concerning the bona fides of this transaction. This being the case, surely at this time it is no longer necessary to point out the proper distinction between improper tax evasion and proper tax avoidance.

Appellant also raises the practical question of how the county is expected to "catch up" with such owner-

ship. The answer, it seems to us, as it did to the court below, is quite simple. The county can rely initially on recorded title. However, as in *McClean, supra,* this does not preclude the county from sua sponte investigation to determine the actual ownership of the structures. By the same token, there is nothing to preclude the tax exempt owner of the structure from bringing its ownership to the attention of the taxing authorities.

Affirmed.